**Burt FUJISHIMA et al., Plaintiffs-Appellants,**

v.

**BOARD OF EDUCATION et al., Defendants-Appellees.**

**No. 71-1573.**

United States Court of Appeals, Seventh Circuit.

May 4, 1972.

Argued March 3, 1972.

Miriam Balanoff, Jonathan M. Hyman, Mark B. Epstein, Lee D. Goldstein, Chicago, Ill., for plaintiffs-appellants.

Charles A. Gilmartin, Richard S. Wisner, Stephen M. Hallenbeck, Gilbert J. Schroeder, James W. Coffey, Robert J. Krajcir, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and DILLIN, District Judge.*

SPRECHER, Circuit Judge.

This suit challenges the constitutionality of section 6–19 of the rules of the Chicago Board of Education:

> No person shall be permitted . . . to distribute on the school premises any books, tracts, or other publications, . . . unless the same shall have been approved by the General Superintendent of Schools.

Plaintiffs are three high school students who were disciplined for violation of section 6–19. On behalf of themselves and of a class of all high school students in Chicago school districts, they sought declaratory and injunctive relief. They also asked for actual and exemplary damages.

Plaintiffs Burt Fujishima and Richard Peluso were seniors at Lane Technical High School. They were suspended for four and seven days respectively for distributing about 350 copies of *The Cosmic Frog*, an "underground" newspaper they and another student published. The papers were distributed free both before and between classes and during lunch breaks.

Plaintiff Robert Balanoff, a sophomore at Bowen High School, was suspended for two days for giving another student an unsigned copy of a petition calling for "teach-ins" concerning the war in Viet Nam. The exchange occurred in May of 1970 in a school corridor between classes.

In October 1970, Balanoff was suspended for five days for distributing leaflets about the war to 15 or 20 students. This distribution took place during a fire drill, while Balanoff and his classmates were in their assigned places across the street from the school.

Following filing of the complaint, plaintiffs filed motions for a temporary restraining order and preliminary injunction, for pretrial summary judgment on the declaratory-relief request and for permission to maintain the suit as a class action. Defendants filed a motion to dismiss on the grounds of lack of jurisdiction and failure to state a claim.

The court set a date for a hearing on the motion to dismiss, along with a schedule for briefs on that motion. At the beginning of the hearing, the district judge presented an oral opinion denying the motion to dismiss. He did not stop there. In apparent disregard of numerous of the Federal Rules of Civil

---

\* District Judge S. Hugh Dillin of the Southern District of Indiana is sitting by designation.

Procedure,[1] the judge, without evidentiary hearing or oral argument, proceeded to rule on all the other pending motions.

He granted the motion for a preliminary injunction (which he made permanent) to the extent of ordering defendants to expunge the records of the Fujishima, Peluso and first Balanoff suspensions. He granted in part and denied in part plaintiffs' motion for summary judgment, but it is not clear either from his opinion or from the later colloquy with counsel just what he declared about the constitutionality of section 6–19. Specifically, we cannot tell whether he intended defendants to be able to enforce section 6–19. He also denied the class-action request and dismissed the case.

## I

■ Plaintiffs appealed. Defendants' primary theory on the appeal is that section 6–19 is constitutionally permissible because it does not require approval of the *content* of a publication before it may be distributed. Unfortunately for defendants' theory, that is neither what the rule says nor how defendants have previously interpreted it. The superintendent must approve "the same," which refers back to "any books, tracts, or other publications." The su-

perintendent cannot perform his duty under the rule without having the publication submitted to him. The principals believed the rule requires approval of the publication itself: the Fujishima and Peluso suspensions were for "distribution of unauthorized material in the school"; the Balanoff suspensions were for "distribution of unauthorized materials in the school building" and for "distributing unapproved literature in class during fire drill."

Because section 6–19 requires prior approval of publications, it is unconstitutional as a prior restraint in violation of the First Amendment. This conclusion is compelled by combining the holdings of Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), and Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). *Tinker* held that, absent a showing of material and substantial interference with the requirements of school discipline, schools may not restrain the full First-Amendment rights of their students. *Near* established one of those rights, freedom to distribute a publication without prior censorship.[2]

Other courts have held unconstitutional similar restraints on student distribution of underground newspapers and political literature.[3] In Riseman v.

---

1. *E. g.*, Fed.R.Civ.P. 23 (see part III, *infra*) ; 56 (defendants had no opportunity to serve opposing affidavits to motion for summary judgment) ; 57 (defendants had no opportunity to respond to motion for declaratory judgment) ; 65 (no hearing was held before issuance of the injunction; the order granting the injunction was not specific, did not describe in detail the acts restrained and did not set forth reasons for issuance). The district judge also resolved a factual dispute against plaintiffs on the second Balanoff suspension without taking evidence.

2. For more recent Supreme Court cases on prior censorship, see New York Times v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) ; Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1

(1971) ; Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) ; Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

3. In harmony with the cases cited in the text are these analogous cases: Antonelli v. Hammond, 308 F.Supp. 1329 (D.Mass. 1970) (board could not require prior submission of material to be printed in college newspaper) ; Dickey v. Alabama State Board of Education, 273 F.Supp. 613 (M.D.Ala.1967) (student editor could not be expelled for inserting "CENSORED" across blank columns where disapproved editorial was to have run) ; Zucker v. Panitz, 299 F.Supp. 102 (S.D.N.Y. 1969) (students could purchase ad in high school paper to express feelings against the war) ; Brooks v. Auburn University, 296 F.Supp. 188 (M.D.Ala.), aff'd, 412

School Committee, 439 F.2d 148 (1st Cir. 1971), a rule directed against advertising and promoting on school grounds was used to deny permission to a student to distribute political literature. The First Circuit invalidated the rule as vague, overbroad and impermissible as a prior restraint. The court said the school might regulate the time, manner and place of distribution, but could not require advance approval of the content of the material.

The Fourth Circuit in Quarterman v. Byrd, 453 F.2d 54 (1971), enjoined the enforcement of a rule which required prior permission from the principal before distributing any material. The court in Sullivan v. Houston Independent School District, 333 F.Supp. 1149 (S.D.Tex.1971), refused to permit the school to give even a one-day review to the principal; the school could not justify imposition of any prior restraint on distribution of underground newspapers.

The district court in Eisner v. Stamford Board of Education, 314 F.Supp. 832 (D.Conn.1970), reached the same result in invalidating a rule which required prior approval.[4] On appeal the Second Circuit affirmed the invalidation, but modified the lower court's opinion so extensively as to obliterate it. 440 F.2d 803 (1971). The court allowed prior submission of publications if accompanied by elaborate procedural safeguards.[5]

We believe that the court erred in Eisner in interpreting Tinker to allow prior restraint of publication—long a constitutionally prohibited power—as a

tool of school officials in "forecasting" substantial disruption of school activities. In proper context, Mr. Justice Fortas' use of the word "forecast" in Tinker means a prediction by school officials that existing conduct, such as the wearing of arm bands—if allowed to continue—will probably interfere with school discipline. 393 U.S. at 514, 89 S. Ct. 733. Tinker in no way suggests that students may be required to announce their intentions of engaging in certain conduct beforehand so school authorities may decide whether to prohibit the conduct. Such a concept of prior restraint is even more offensive when applied to the long-protected area of publication.

This interpretation of the Tinker forecast rule is supported by this court's opinion in Scoville v. Board of Education, 425 F.2d 10 (7th Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed. 2d 55 (1970). There the court applied the rule to a decision made by school officials three days after publication and distribution of the newspaper. Even though Grass High contained articles critical of the school administration, this court found that the board could not reasonably have forecast substantial disruption and therefore could not expel the student authors.

The Tinker forecast rule is properly a formula for determining when the requirements of school discipline justify punishment of students for exercise of their First-Amendment rights. It is not a basis for establishing a system of censorship and licensing designed to prevent the exercise of First-Amendment rights.

---

F.2d 1171 (5th Cir. 1969), and Snyder v. Board of Trustees, 286 F.Supp. 927 (N.D.Ill.1968) (banning certain speakers from appearing on campus was an unconstitutional prior restraint).

4. The rule gave the following guidelines for approval or disapproval:
No material shall be distributed which, either by its content or by the manner of distribution itself, will interfere with the proper and orderly operation and discipline of the school, will cause violence or disorder, or will constitute an invasion of the rights of others.

This section enabled the Second Circuit to surmise that the rule comported with the standards of Tinker. The court surely would not have been so lenient with a rule stating no guidelines for administrative decision, such as section 6-19.

5. The Fourth Circuit in Quarterman v. Byrd, supra, seems to follow Eisner in finding lack of criteria and procedural safeguards, rather than the imposition of a prior restraint, as the regulation's "basic vice." 453 F.2d at 59.

Because we believe *Eisner* is unsound constitutional law, and because defendants in effect concede that they cannot require submission of publications before approval of distribution, we declare section 6–19 unconstitutional and remand the case for entry of an injunction against its enforcement.[6]

Such injunction will not prevent defendants from promulgating reasonable, specific regulations setting forth the time, manner and place in which distribution of written materials may occur. This does not mean, as defendants' brief suggests, that the board may require a student to obtain administrative approval of the time, manner and place of the particular distribution he proposes. The board has the burden of telling students when, how and where they may distribute materials. *See* Sullivan v. Houston Independent School District, 307 F.Supp. 1328, 1340 (S.D.Tex.1969). The board may then punish students who violate those regulations. Of course, the board may also establish a rule punishing students who publish and distribute on school grounds obscene [7] or libelous literature.

### II

▆ Plaintiff Balanoff's second suspension remains on his record. He was punished under section 6–19 [8] for distributing leaflets to classmates during a fire drill. Because the rule is unconstitutional, his suspension under it cannot stand.

Defendants argue that the justification for the suspension is "self-evident"

from the record. All that appears in the record are the following allegations by plaintiffs:

At no time during the fire drill was there any disorder. The distribution of said leaflets did not disrupt classes; nor did it interfere with any other proper school activity, including the fire drill. At no time during the distribution was the Plaintiff asked to stop distributing the leaflets by any member of the Bowen faculty or administration.

Neither in the district court nor on appeal have defendants suggested that evidence exists to challenge those factual assertions.

The district court speculated that students might use a fire drill, or might even instigate one, to engage in disruptive activities. His error was similar to the district court's in Scoville v. Board of Education, 425 F.2d 10, 13–14 (7th Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). "No reasonable inference of [a showing that the action was taken on a reasonable forecast of a substantial disruption of school activity] can be drawn from the complaint. . . ."

The board might issue a rule prohibiting distribution of literature during a fire drill as a regulation of time and place, but it could not apply such a rule *ex post facto* to Balanoff.

The district court's order shall include a direction to expunge Balanoff's second suspension from his record.

---

6. Plaintiffs omit damages from the "precise relief sought" in their brief. Our remand therefore does not include that issue.

7. Defendants here do not argue that *The Cosmic Frog* is obscene, but some school administrators have labeled as obscenity the sort of profanity and vulgarisms which appears in *The Cosmic Frog*. They are incorrect, because those words are not used to appeal to prurient sexual interests. *See* Sullivan v. Houston Independent School District, 333 F.Supp. 1149, 1162–1167 (S.D.Tex.1971).

8. Defendants argue that Balanoff was not suspended under section 6–19 because no section is specified in the suspension order and because the distribution did not occur "on the school premises." Actually, all the suspensions were authorized by section 6–9, "for gross disobedience or misconduct." Section 6–19 was used solely to define the misconduct. Since his principal noted the reason for suspension as "distributing unapproved literature in class during fire drill," we believe he was using section 6–19 as the criterion for suspension.

## III

 There remains the question of the class suit. The district judge said: "Under this decision I find that there is no need for a class action and the motion for the establishment of such a class is thus denied." If the prerequisites and conditions of Fed.R.Civ.P. 23 are met, a court may not deny class status because there is no "need" for it.

 Here the requirements of Rule 23(a) are satisfied because the number of Chicago high school students makes joinder impracticable, the question of law is common to the class, the claims of plaintiffs are typical of the class and plaintiffs have fairly and adequately protected the interests of the class. The action may be maintained under Rule 23(b) (2), which was intended to cover civil-rights cases. Notes of Advisory Committee on Rules. We note that a number of similar cases have been maintained as class actions. Quarterman v. Byrd, 453 F.2d 54 (4th Cir. 1971); Sullivan v. Houston, Independent School District, 307 F.Supp. 1328 (S.D.Tex. 1969), and 333 F.Supp. 1149 (S.D.Tex. 1971); Zucker v. Panitz, 299 F.Supp. 102 (S.D.N.Y.1969); Snyder v. Board of Trustees, 286 F.Supp. 927 (N.D.Ill. 1968). *See also* Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1201–1202 (7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

The district court's order denying class status is therefore reversed. On remand, the district court should order defendants to give notice of the final order to all class members under Rule 23(d) (2). The notice need not be given to students individually, but might be given through posted or intercom announcements.

The decision below, except for the portion granting injunctive and declaratory relief to plaintiffs, is reversed and the case remanded for entry of a judgment order consistent with this opinion.