**Maxine PARTEE, Plaintiff–Appellant,**

v.

**METROPOLITAN SCHOOL DISTRICT OF WASHINGTON TOWNSHIP, Dr. Phillip McDaniel, Superintendent, Ruth Brooks, Department Head, et al., Defendants–Appellees.**

No. 91–2132.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1991.

Decided Jan. 21, 1992.

John O. Moss, Moss & Walton, Indianapolis, Ind. (argued), for plaintiff-appellant.

Michael A. Blickman, David M. Mattingly, Kevin C. Woodhouse (argued), Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendants-appellees.

Before WOOD, Jr., and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The Metropolitan School District of Washington Township (the "school district") operates both a high school and a career center in Indianapolis, Indiana. Maxine Partee is a teacher in the Business Education Department of the career center. In 1987, she sued the school district, its superintendent (Phillip J. McDaniel), and other officials. She claimed, among other things, that 1) McDaniel infringed her first amendment rights, as protected through 42 U.S.C. § 1983, by instructing her not to speak on a certain topic, and 2) the school district discriminated against her on account of her race by refusing to promote her to various positions, in violation of 42 U.S.C. § 1981. The parties jointly stipulated that these claims did not run against the superintendent in his personal capacity, but only in his official capacity. The district court granted the defendants summary judgment on all of the claims. We affirm.

### Discussion

Only three of Partee's contentions require discussion. She claims that the district court erred by holding that 1) the school district could not be liable under § 1983 for McDaniel's alleged infringement of her first amendment rights; 2) she could not sue under § 1981 for the denials of promotions because those promotions would not have created new and distinct relations with her employer; and 3) she could not be relieved, pursuant to Fed. R.Civ.P. 60(b), from her stipulation to dismiss her claims against McDaniel in his personal capacity.

1. § 1983 Claim

 In her complaint, Partee claimed that McDaniel violated her first amendment rights by advising her not to speak publicly on the issue of students' standardized test scores. The district court held that the school district could not be held

liable under § 1983 for McDaniel's isolated act. A local government cannot be held liable for its employees' acts under § 1983 on a theory of respondeat superior; the liability must be founded on an official policy or custom. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978). And an isolated decision by a municipal employee or official constitutes official policy only if that official has "final policymaking authority" for the challenged act under state law. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). The district court decided that the school board, not McDaniel, has final policymaking authority regarding Partee's out-of-classroom speech. The district court relied on Indiana law and school district policy in coming to this conclusion. First, Indiana law provides that school boards, not superintendents, have the authority to "prepare, make, enforce, amend, or repeal rules, regulations, and procedures for the government and management of the ... school corporation, its agents, employees and pupils...." Ind.Code Ann. § 20–5–2–2(17) (West 1991 Supp.). Superintendents, by contrast, have the power merely *"to make recommendations to the board* concerning ... the employment and dismissal of personnel, ... and all other matters pertaining to the conduct of the school...." Ind.Code Ann. § 20–4–8–20 (West 1985) (emphasis added). Superintendents have the power to make recommendations, but school boards set final policy. In addition, School District Policy No. 1112.13 provides that teachers should consult with their superintendents "before initiating any statements concerning the general welfare of the school system." Any decision by the superintendent under this policy was not final, however, because Partee could have appealed to the school board.

Partee attempts to circumvent these facts by arguing that the superintendent has final policymaking authority regarding instruction. Partee thus relies on *Mazanec v. North Judson—San Pierre School Corp.,* 798 F.2d 230, 235 (7th Cir.1986), which held that a superintendent was a final policymaker with respect to compulsory attendance policy. In *Mazanec,* however, we held that the superintendent made final policy regarding compulsory schooling because Indiana law *requires* superintendents to enforce compulsory school attendance law in their respective jurisdictions. *See* Ind.Code Ann. § 20–8.1–3–32 (West 1985). No such law compels superintendents to monitor teachers' out-of-classroom speech. Moreover, Partee's case does not concern instruction; Partee is suing because McDaniel asked Partee not to discuss the test score issue *outside* the classroom. The district court did not err in concluding that McDaniel did not have final authority to order teachers to curtail their speech, or that Partee may not bring a first amendment claim against the school board based on McDaniel's isolated act.

### 2. § 1981 Claim

■ Partee also claimed that the school district discriminated against her by refusing to promote her to any of a number of positions on account of her race, in violation of § 1981. The district court granted summary judgment on this issue, holding that the promotions would not have created a new and distinct relationship between Partee and the school district that would entitle Partee to sue under § 1981. § 1981 gives "[a]ll persons within the jurisdiction of the United States ... the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989), the Supreme Court held that § 1981 "does not apply to conduct which occurs after the formation of a contract...." *Id.* 109 S.Ct. at 2369. Discriminatory treatment of an existing employee, therefore, is not generally covered by § 1981. *Id.* at 2373. Promotion claims, however, straddle the line between "formation conduct" and "post-formation conduct." As a result, the Court further held that "whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new con-

tract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.* at 2377.

In the past, we have expressed some uncertainty as to the precise meaning of *Patterson*'s "new and distinct relation" test. *See generally Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989); *McKnight v. General Motors Corp.*, 908 F.2d 104 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991). Because Congress has recently overruled *Patterson,*[1] it seems unwise to attempt to clarify the rule. It is also unnecessary. Whatever the test's precise contours, the promotions for which Partee applied would not have created a new and distinct relation. If Partee had been promoted, she would have assumed certain nonteaching responsibilities and a reduced teaching load. On the other hand, her employment would still have been governed by the same contract and the same collective bargaining agreement. She would have been paid at the same rate (although for more hours). In essence, Partee would have become a teacher with some supervisory and outside responsibilities for which she received some additional compensation. We do not believe that such a promotion satisfies *Patterson.* In *Mozee v. American Commercial Marine Service Co.*, 940 F.2d 1036 (7th Cir.1991), we held that a promotion from overhead crane operator to leadman would not have created a new and distinct relation. A primary effect of the promotion would have been to give the plaintiff supervisory duties. His compensation scheme, position within the collective bargaining unit, and other duties would have remained substantially the same. *Mozee* thus establishes that the mere assumption of supervisory duties, without more, does not create a new and distinct employer-employee relationship. If the assumption of supervisory duties were combined with other factors, however, a new relationship might be created. *See, e.g., Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908, 910 (4th Cir.1989) (new and distinct relationship when plaintiff would have been promoted from clerk to supervisor with increase in responsibilities *and* pay); *Figures v. Board of Public Utilities of Kansas City, Kan.*, 731 F.Supp. 1479, 1482 (D.Kan.1990) (refusing to grant summary judgment for employer when plaintiff would have been promoted to supervisory position in which he would have changed from a bargaining-unit to a non-bargaining management position). *Mozee* governs Partee's case.

### 3. Rule 60(b) Motion

■ Partee last attempts to revive her individual capacity claims against McDaniel, even though she dismissed those claims in a joint stipulation with the defendants. The stipulation provided that "the parties ... stipulate and agree that any and all claims ... against Defendant Dr. Phillip J. McDaniel, in his individual or personal capacity, shall be dismissed with prejudice." At the trial court level, Partee attempted to side-step this stipulation eight months after the fact. She claimed that in this stipulation she intended to dismiss claims against McDaniel that arose from actions taken in his private life, outside his capacity as a superintendent; she did not intend to dismiss claims arising from his official acts where damages were to come from his own pocket. Accordingly, Partee asked the district court to set aside the dismissal under Fed.R.Civ.P. 60(b)(1).[2]

---

1. Although the Civil Rights Act of 1991 may have fully or partially overruled *Patterson,* Public Law 102–166 § 101 (November 21, 1991), Partee did not argue in her brief or at oral argument that the Act applies retroactively to her case. Partee's counsel addressed the issue only after it was raised by this Court. Although Partee did finally argue the issue in supplemental papers filed a week after oral argument, we

believe that Partee has waived any consideration of the issue.

2. Rule 60(b) provides, in relevant part:

"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... excusable neglect...."

The trial court's decision to deny the motion cannot be overturned unless the court abused its discretion. *Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 831 (7th Cir.1985). The trial court denied the motion on the ground that reviving the individual capacity claims would have unduly prejudiced McDaniel. For eight months, he had proceeded as if his personal assets were not at risk. It would have been "unjust" to force him to defend himself when he had not engaged in discovery or prepared for trial for so long. The trial court also held that it was not excusable neglect for Partee's experienced counsel to have misunderstood the distinction between "personal capacity" and "official capacity." The trial court did not abuse its discretion in relying on these grounds to deny the motion.

### Conclusion

For the reasons stated, the decision of the district court is AFFIRMED.