**Bryan HARLESS by his parent and natural guardian William HARLESS, Plaintiffs,**

v.

**Linda DARR, individually and in her official capacity as a teacher for the Franklin Township Community School Corporation, et al., Defendants.**

**No. IP 94–498–C–T/G.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 27, 1996.

Edward S. Adams, Indianapolis, IN, for Plaintiffs.

David R. Day, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, IN and John A. Kitley Jr., Beech Grove, IN, for Defendants.

## ENTRY ON PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

TINDER, District Judge.

This matter comes before the court on the Parties' Cross–Motions for Summary Judgment. For the reasons set forth below, the court will **GRANT** in part the motion for summary judgment. As set out below and in its Notice of Briefing Schedule, the court orders additional briefing on the issue of whether Franklin Township Community School Corporation's current policy on distributing literature ("the current policy") constitutes a prior restraint under the First Amendment of the United States Constitution. The court defers its disposition of the Plaintiffs' state law claims pending resolution of the remaining federal claim. The Parties should note that final judgment, pursuant to FED.R.CIV.P. 58, will not be entered as to any claim in this case until resolution of the remaining claims.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

At the time that he filed this Complaint, Bryan Harless ("Bryan") was a first-grader at Adams Elementary School in the Franklin Township Community School Corporation ("Franklin.") Sometime in November, 1993, Bryan's teacher, Linda Darr, ("Darr"), learned that Bryan had been distributing religious tracts to other first-grade students in his class. Bryan had distributed the leaflets while the students were in their classroom, preparing to go to the lunch room. (Darr. Dep. at 5.) The lunch hour had not yet begun. (Id.) During the lunch hour, Darr consulted with Karen Schuldt,

("Schuldt"), the Principal of Adams Elementary School. Schuldt told Darr that as far as she knew, it was not okay for Bryan to distribute the leaflets, but that she would check into it. (Darr Dep. at 6.) After lunch, Darr explained to Bryan that he could not pass out the tracts, and she asked the first-graders to give the tracts back to Bryan. She then asked Bryan to put the tracts back into his school bag, which he did. (Darr Dep. at 6.) Schuldt then called Bryan into the hallway and "asked him not to pass out the literature." (Schuldt Dep. at 6.)

About two weeks later,[1] Bryan again passed out literature in the classroom at the same time, just before the lunch period. (Darr. Dep. at 10–11.) According to Darr, the children "had just had their restroom break . . . and were coming into the class-room" where they "were getting ready to make the lunch line." (Darr Dep. at 11.) Darr testified that the children were not at break at this time, but were forming a lunch line, and that teachers "have certain expectations for listening and following directions" at this time. (Darr. Dep. at 11.) Darr testified that in neither instance did she consider Bryan's distributing the leaflets as "disruptive," though she said the leafletting "interrupt[ed]" the process of quieting the children and getting them into line. During this second incident, however, Darr said nothing to Bryan; she mentioned the incident to Schuldt.[2] Darr testified that Schuldt had instructed her to let Schuldt know if Bryan distributed literature, but that Schuldt did not advise her to take any other specific action if Darr observed Bryan distributing literature. (Darr Dep. at 15.) Schuldt testified that after this second incident, she called Bryan into her office and spoke with him about other ways in which he could "witness [at school] other than passing out Christian tracts. . . ." (Schuldt Dep. at 8.)

On March 15, 1994, Bryan Harless filed this suit (by his father as next friend), naming as Defendants Franklin, Adams Elementary School,[3] Darr, and Schuldt.[4] Sometime after initiating this suit, Bryan again distributed religious tracts on the school bus. Schuldt again spoke with Bryan and asked him not to pass out tracts. (Schuldt Dep. at 20–23.) Schuldt never disciplined or sanctioned Bryan for passing out tracts at school or on the bus. (Schuldt Dep. at 22.) In May, 1994, Franklin adopted an official policy on distributing literature in schools.[5] Following adoption of the policy, Bryan has distributed religious tracts in compliance with the policy without impediment. (Harless Dep. at 24.)

The Plaintiffs' Amended Complaint alleges that the Defendants abridged Bryan's rights of free speech and free exercise of religion under both the United States Constitution and the Constitution of the State of Indiana, and that the Defendants' actions violated the provisions of the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq., and the provisions of 42 U.S.C. § 2000a–1 and 2000a–2, prohibiting discrimination on the basis of religion in public accommodations. The Plaintiffs challenge both the constitutionality of the current official policy, and the constitutionality of the Defendants' actions taken before Franklin adopted its official policy. The Plaintiffs seek damages, and declaratory and injunctive relief.

## II. SUMMARY JUDGMENT STANDARD

The Seventh Circuit stated the standard for summary judgment in *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987).

Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to in-

---

1. This time frame is unclear. Schuldt testified that the second incident occurred "after Christmas sometime." (Schuldt Dep. at 8.)

2. Darr also testified that she heard of one other instance in which Bryan passed out leaflets on the bus. (Darr Dep. at 12–13.)

3. The Plaintiffs have dropped Adams Elementary School as a party to this action.

4. The Plaintiffs later amended their complaint to add as a defendant Elmo Carver, ("Carver"), the Superintendent of Franklin during the 1993–94 school year.

5. A copy of the policy is appended to this Entry.

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When the facts are disputed, the parties must produce proper documentary evidence to support their contentions, and may not rest on mere allegations in the pleadings, *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985). In reviewing a grant of summary judgment, all reasonable inferences from the evidence presented must be drawn in favor of the opposing party. *Matsushita Elecs. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).... The mere existence of a factual dispute will not bar summary judgment unless "the disputed fact is outcome determinative under governing law." *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

*Id.* at 642.

The Supreme Court further clarified the scope of Federal Rule of Civil Procedure 56 in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Celotex*, the Court held that the initial burden is on the moving party to demonstrate "with or without affidavits" the absence of genuine issues of material fact and that, absent such material facts, judgment should be granted as a matter of law in the moving party's favor. 477 U.S. at 323, 106 S.Ct. at 2552–53. Once the moving party has met its burden, the opposing party must "go beyond the pleadings" and designate specific facts to support or defend each element of the claim, demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Becker v. Tenenbaum–Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). Not every factual dispute creates a barrier to summary judgment, "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Supplementing Rule 56, this district promulgated Local Rule 56.1 to establish procedures for summary judgment motions. Local Rule 56.1 requires the party moving for summary judgment to file a Statement of Material Facts and the party opposing the motion to file a Statement of Genuine Issues "setting forth ... all material facts as to which it is contended there exists a genuine issue necessary to be litigated." S.D.IND. L.R. 56.1. The effect of these requirements is apparent:

> In determining the motion for summary judgment, the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

*Id.* Read together, Rule 56 and Local Rule 56.1 stand for the proposition that if the party opposing summary judgment fails to demonstrate the existence of a genuine issue of material fact, the facts offered by the movant, and contained in the record, are the basis of the summary judgment decision.

In this case, the Defendants have filed a statement of material facts pursuant to Local Rule 56.1. In response to Defendants' motion for summary judgment, the Plaintiffs filed an opposition brief, but Plaintiffs failed to provide the court with a Statement of Genuine Issues as required by the Local Rules. The consequence is that "the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy...." S.D.Inc.L.R. 56.1. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 640 (7th Cir.1995) (discussing application of Local Rule 56.1.)

## III. DISCUSSION

### A. Constitutionality of Current Official Policy

#### 1. Free Speech Clause

The court begins by examining the constitutionality of the policy that is now in place in Franklin schools. The court is guided in large part by the Seventh Circuit's ruling in *Hedges v. Wauconda Community Unit Sch. Dist. No. 118,* 9 F.3d 1295 (7th Cir.1993). There, the Seventh Circuit approved the constitutionality of a policy limiting the distribution of literature in the junior-high school setting. As in the Franklin policy, the policy in *Hedges* required students who wished to distribute literature to do so from a table near the main entrance of the school, within specified times. As here, the policy in *Hedges* also required students who sought to distribute more than ten copies of a written material to notify the principal twenty-four hours in advance. *Hedges,* 9 F.3d at 1295. Indeed, as the Defendants correctly point out, the policy approved in *Hedges* was more restrictive of the content of the literature than is the policy at issue here because it prohibited students from distributing "written material which is primarily prepared by non-students." *Id.* at 1301.

Furthermore, the policy at issue here does not discriminate against the distribution of religious material on its face, the aspect of the policy in *Hedges* that the Seventh Circuit held to be unconstitutional. Although "no arm of government may discriminate against religious speech when speech on other subjects is permitted in the same place at the same time." *Hedges,* 9 F.3d at 1297 (citing *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,* 508 U.S. 384, 394–96, 113 S.Ct. 2141, 2148, 124 L.Ed.2d 352 (1993)), there is nothing in the record to suggest, nor do the Plaintiffs argue, that the school corporation has treated the distribution of religious material any differently than the distri-

bution of other printed matter. And the Seventh Circuit has been clear that "[p]ermitting individual students to pass out literature with religious themes, at times and places they could pass out literature with political or artistic themes, does not entail a similar preference. It is instead neutrality toward religion." *Id.* at 1299.

The Plaintiffs, however, also challenge as a prior restraint the portion of the current policy that requires students to notify the Principal of their intention to distribute literature, and to submit a copy of the literature to the Superintendent for review. In this respect, Franklin's current policy differs from the policy reviewed in *Hedges;* although the policy in *Hedges* required students to notify the principal of their intent to distribute literature at the table, it did not require students to submit a copy of the literature for prior review. The provision at issue here states:

> When any student or students, who as an individual or a group, seek to distribute more than ten (10) copies of the same written material . . . in the school or on the school grounds, they must comply with the following procedures:
>
> 1. At least forty-eight (48) hours prior to any distribution of material, the student shall notify the principal of his/her intent to distribute, and shall provide a copy of the material to be reviewed by the superintendent.

In *Fujishima v. Board of Educ.,* 460 F.2d 1355 (7th Cir.1972), the Seventh Circuit struck down as a prior restraint a school board rule prohibiting student distribution of literature on school grounds "unless the same shall have been approved by the General Superintendent of Schools." *Id.* at 1356. Neither party has raised the question of the continuing validity of *Fujishima,*[6] especially in light of the Seventh Circuit's recognition in *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 737 (7th Cir.1994) that "[s]ince *Tinker*

---

**6.** On the issue of prior restraint, the parties themselves cite only to *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The Defendants argue that *Near* has no applicability within the school setting. The holding in *Fujishima,* however, explicitly rested on *Near. Fujishima,* 460 F.2d at 1357. The Defen-

dants also rely on *Sherman v. Community Consolidated Sch. Dist. 21 of Wheeling Township,* 8 F.3d 1160 (7th Cir.1993). *Sherman* did not involve a prior restraint challenge. Also, the school district in *Sherman* required the superintendent's prior approval to distribute literature from outside organizations, not students.

... the Supreme Court has cast some doubt on the extent to which students retain free speech rights in the school setting." Since *Fujishima*, for example, the Supreme Court has held that schools may permissibly regulate lewd or indecent speech within the school setting. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). And in *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), the Supreme Court held that a school may properly exercise editorial control over "school-sponsored expressive activities." [7] Indeed, in the policy at issue, the school has banned outright several categories of speech, including "indecent," commercial and libelous speech. The Plaintiffs themselves concede that the school may properly ban the dissemination of obscene materials. (Harless Dep. at 26.)

Furthermore, since *Fujishima* and indeed, since *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) the Supreme Court has relied increasingly on public forum analysis in determining the extent to which government—and schools—may permissibly regulate speech. *See e.g., Lamb's Chapel v. Center Moriches Sch. Dist.*, 508 U.S. 384, 390–91, 113 S.Ct. 2141, 2146, 124 L.Ed.2d 352 (1993) (stating that "[t]here is no question that the [School] District, like the private property owner of property, may legally preserve the property under its control for the use to which it is dedicated.") (and cases cited). *See also Hedges*, 9 F.3d at 1300

(school is a non-public forum); *Grossbaum v. Indianapolis–Marion County Bldg. Auth.*, 63 F.3d 581, 586–587 (7th Cir.1995) (reviewing principles of forum analysis). Furthermore, the Seventh Circuit, citing *Fraser* and *Bethel*, has suggested that age is a relevant factor in determining the extent to which school children enjoy First Amendment rights. *See Baxter*, 26 F.3d at 738 (quoting *Kuhlmeier*, 484 U.S. at 272, 108 S.Ct. at 570–71, for proposition that "a school must be able to take into account the emotional maturity of the intended audience in determining whether to disseminate student speech on potentially sensitive topics....")

Nevertheless, none of these decisions compel the conclusion that a school corporation may adopt a system of prior restraint, such as the one at issue here, to accomplish its goals.[8] Although the Defendants make the attractive policy argument that because grade schoolers are impressionable, the school ought to be able to review for content literature that students wish to distribute generally, the Seventh Circuit stated plainly in *Fujishima* that the solution for the school board who wants to control distribution of offensive or disruptive materials was to "establish a rule punishing students who publish and distribute on school grounds obscene and libelous literature, rather than to adopt a system of prior restraint." *Fujishima*, 460 F.2d. at 1359.[9] (Alternatively, precisely because the students here are grade schoolers, one wonders what the real dangers are that they will distribute sensitive material.) Fur-

---

**7.** The Supreme Court in *Kuhlmeier* expressly did not reach the question of "whether [written] regulations are required before school officials may censor publications not sponsored by the school that students seek to distribute on school grounds." *Id.* at 273 n. 6, 108 S.Ct. at 571 n. 6 (citations omitted).

**8.** In a nonpublic forum, for example, "[c]ontrol over access ... can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Grossbaum*, 63 F.3d at 587 (citations omitted). The court questions whether, even in a nonpublic forum, government may adopt a system of prior restraint consistent with a standard requiring viewpoint neutrality. *But see Greer v. Spock*, 424 U.S. 828, 864–865, 96 S.Ct. 1211, 1230–31, 47 L.Ed.2d 505 (1976) (Brennan, J., dissenting)

(noting that majority had tacitly approved a system of prior restraint on a military base, a nonpublic forum.)

**9.** One might seek to distinguish this case from the one presented in *Fujishima* because here the school has adopted an outright ban on certain categories of speech, and thus, arguably, the Superintendent's discretion is limited to review of those categories of speech. In *Fujishima*, however, the Seventh Circuit appeared to reject the view of other circuits that prior restraints within the school setting are permissible if accompanied by editorial criteria and procedural safeguards. *See Fujishima*, 460 F.2d at 1358–1359. *See also Burch v. Barker*, 861 F.2d 1149 (9th Cir.1988) (noting that *Fujishima* held that "no system of prior review contemplating content-based censorship could validly be imposed under the first amendment.").

thermore, despite the Supreme Court's holdings in recent years that "cast some doubt on the extent to which students retain free speech rights in the school setting," *Baxter,* 26 F.3d at 737, most circuits that, like the Seventh Circuit, have at one time held that schools may not adopt prior restraints in regulating student speech have apparently not retreated from that position. *See, e.g., Burch v. Barker,* 861 F.2d 1149, 1155–1157 (9th Cir.1988) (reviewing cases and holding that *Fraser* and *Kuhlmeier* "compel the conclusion ... that a policy which subjects all non-school-sponsored communications to pre-distribution review for content censorship violates the first amendment"). *See also Johnston–Loehner v. O'Brien,* 859 F.Supp. 575, 580 (M.D.Fla.1994) (holding unconstitutional as prior restraint school district policy requiring elementary school students to obtain prior review and approval before distributing literature).

With this framework in mind, the court directs the parties to submit additional briefing on the limited question of whether *Fujishima* continues to represent the current state of the law on the question of prior restraints in the school setting,[10] and whether a grammar school may permissibly require prior review of printed matter that students seek to distribute generally to the student body.

### 2. Free Exercise of Religion and the Religious Freedom Restoration Act

■ The Plaintiffs assert that the current policy violates their free exercise of religion under the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* ("RFRA"). Section 2000bb–1(a) of the Act provides that "Gov-

ernment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability...." Congress' purpose in enacting RFRA was to "restore the compelling interest test as set forth in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972)...." 42 U.S.C. 2000bb(b)(2). Under RFRA, the burden of establishing that the government has substantially burdened the right of free exercise of religion rests with the religious adherent. *Werner v. Cotter,* 49 F.3d 1476 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995).[11] Courts have adopted a range of definitions of "substantial burden" under RFRA. *See Sasnett v. Sullivan,* 908 F.Supp. 1429 (W.D.Wis.1995) (collecting cases). Nevertheless, the sum of these cases require a threshold showing that a government rule or regulation "significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a [plaintiff's] individual beliefs; ... meaningfully curtail[s] [plaintiff's] ability to express adherence to his or her faith; or ... den[ies] a [plaintiff] reasonable opportunities to engage in those activities that are fundamental to a [plaintiff's] religion." *Werner,* 49 F.3d at 1480 (citations omitted). *See also Sasnett,* 908 F.Supp. at 1444 (plaintiff establishes "substantial burden" by showing that "the burdened conduct or practice is 1) motivated by a sincerely held religious belief and 2) significantly or meaningfully curtailed.")

■ The Plaintiffs apparently argue that the school's current policy substantially burdens Bryan's free exercise of religion.[12]

---

**10.** Absent some indication that decisions of the Supreme Court or the Seventh Circuit have abrogated *Fujishima,* this court is bound to apply it. *Heath v. Varity Corp.,* 71 F.3d 256, 257 (7th Cir.1995) ("a district court should apply existing precedent while explaining why innovation is in order.")

**11.** Similarly, Plaintiffs asserting a free exercise violation bear the burden of proving that their First Amendment rights were infringed. *Menora v. Illinois High School Ass'n,* 683 F.2d 1030, 1035 (7th Cir.1982), *cert. denied,* 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983).

**12.** In their brief, the Plaintiffs argue that "Defendant's [sic] violated [Bryan's] right by precluding distribution on school grounds," and that "Schuldt impermissibly violated Bryan's rights by calling him aside and discussing with him other ways he could spread his message." (Mem. in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross–Motion for Summ. J., at 8.) These actions took place before the adoption of the official policy, and the court discusses them below. But the Plaintiffs also assert that Bryan's right to exercise his religion "continues to be ... abridged." (*Id.* at 7.) The court reads this as a challenge to the current policy.

They maintain that because "[a]n integral part of [Bryan's] faith is evangelism," (Complt. ¶ 37), the school substantially burdens Bryan's faith by precluding distribution of tracts. The Plaintiffs have failed to carry their threshold burden because they have not established that the official policy prohibits Bryan from distributing tracts; it merely requires Bryan to distribute tracts at established times and at an established place. Bryan is thus free to distribute tracts on the school premises at designated times and off the school premises at any time. A policy denying Bryan an unfettered right to distribute literature on school grounds is simply not the type of restraint proscribed by RFRA or the Free Exercise Clause, and the Plaintiffs have failed to establish that the policy significantly curtails Bryan's belief in evangelism. *Cf. Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (prohibiting state from compelling Amish children to attend school where formal education beyond the eighth grade is contrary to Amish beliefs.); *Sasnett,* 908 F.Supp. at 1445 (holding prison rule that banned all jewelry—and so the wearing of crosses—substantially burdened prisoners' religion.) *See also Trinity United Methodist Parish v. Board of Educ. of the City Sch. Dist. of the City of Newburgh,* 907 F.Supp. 707, 717 (S.D.N.Y.1995) (denying free exercise and RFRA claims where church failed to show that the practice of its religion requires it to present religious services at public schools).

### 3. Claims under 42 U.S.C. § 2000a–1 and 2000a–2

■ The Plaintiffs note that the Defendants did not move for summary judgment in their original brief on the claims alleging religious discrimination in access to a public accommodation. Parties may, of course, move for summary judgment at any time, and the Defendants have moved for summary judgment on these claims in their Reply Brief. The Defendants argue that these statutes do not apply to religious discrimination in access to schools, because schools are not "public accommodations" within the meaning of the statute. *See* 42 U.S.C. § 2000a(b) (listing establishments to which statute applies.) The court agrees with this

conclusion of law. Nevertheless, in the interest of fairness, Plaintiffs may elect to submit additional argument on this point as set out in court's Notice of Briefing Schedule. Otherwise, the court will grant the Defendants' motion for summary judgment on this point.

### B. Constitutionality of Actions Taken Prior to Adoption of Official Policy

Having concluded that the current policy does not violate federal constitutional or statutory provisions, the court turns to consider whether any liability attaches to any of the Defendants for actions taken prior to the adoption of the current Franklin policy. The Defendants argue that Franklin is not liable because the Plaintiffs have failed to establish the existence of an official custom or policy. The Defendants also argue that the individual Defendants—Darr, Schuldt and Carver—are qualifiedly immune. The court addresses these arguments in turn.

#### 1. Municipal Liability

The Plaintiff has sued Franklin Township School Corporation directly and through its officers acting in their official capacity. The question presented here is whether Franklin can be held liable for any of its officers' actions taken prior to the adoption of the official policy. It is well established that although municipalities are deemed "persons" for purposes of section 1983, municipalities may not be held liable on a theory of *respondeat superior. Monell v. Dep't of Social Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). *See also Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735–736, 109 S.Ct. 2702, 2722–23, 105 L.Ed.2d 598 (1989); *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734 (7th Cir.1994). Thus, "[m]unicipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents." *Auriemma v. Rice,* 957 F.2d 397, 399 (7th Cir.1992), *quoted in Baxter,* 26 F.3d at 734. The Defendants argue that Harless has failed to establish the existence of an official policy or custom that would make Franklin itself liable under § 1983 for Darr's or Schuldt's actions in preventing Harless from distributing literature

before the adoption of the official policy. Seventh Circuit law has recognized three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Baxter*, 26 F.3d at 735 (internal quotations and citations omitted).

■■■ The Plaintiffs make an argument of the third type.[13] Under this view, "an isolated decision by a municipal employee or official constitutes official policy only if that official has 'final policymaking authority' for the challenged act under state law." *Partee v. Metro. Sch. Dist. of Washington Tp.*, 954 F.2d 454, 456 (7th Cir.1992) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). The Plaintiffs do not attempt to argue that Darr herself, Harless' first-grade teacher, was a person with final policymaking authority. But they do argue that the Superintendent and the Principal had final policymaking authority. The Plaintiffs, however, have not highlighted facts in the record to support the factual position that the Superintendent took any action before the school board adopted its official position.[14] Thus, Franklin is liable, if at all, only if Schuldt, the Principal of the school, held final policy-making authority.[15]

---

13. The Plaintiffs also seem to argue that an unwritten policy existed prior to the adoption of the official policy. The Plaintiffs argue that "the record is clear ... that the 'policy' of Adams Elementary School, prior to May, 1994, permitted distribution of virtually anything except the religious tracts of Bryan Harless." (Mem. in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross–Motion for Summ. J. at 5) [hereafter "Pl.'s Br."]. The Plaintiffs overstate their case. In fact, the record suggests that the school corporation authorized for general distribution such things as Girl Scout, Boy Scout and YMCA flyers. According to the deposition testimony, the flyers were placed in teachers' mailboxes for general distribution. Thus, the record supports the view that the school itself authorized certain distributions through certain channels. But the record is uncontroverted that, prior to Bryan's distributing literature at school, no other student had attempted to distribute literature to other students directly. (Darr Dep. at 22.) Thus, the court rejects the Plaintiffs' argument that the school had any policy in place regarding student distribution of literature.

The Plaintiffs also seem to argue that by the third time Schuldt spoke to Harless about his distributing materials, an official policy had come into existence, (Pl.'s Br. at 5–6), and the School Corporation "acquiesced" in the adoption of this policy. This argument also fails. In order to impose municipal liability under such a theory, the Plaintiff needs to establish that authorized policymakers ratified the policy. *See Cornfield by Lewis v. School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir.1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion)). The Plaintiffs make no showing that the School Board knew of the alleged policy, nor indeed do they suggest what specific policy the Board could be said to have ratified.

Finally, the Plaintiffs in their Amended Complaint allege the existence of official policy through a policy of inadequate training or supervision. This is, of course, an alternative route to establish the existence of official policy, *see, e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). But the Plaintiffs have not argued this point in their brief, and have apparently abandoned the argument. The court notes, in any event, that the claim is a difficult one to make out, available in only "limited circumstances" *Cornfield*, 991 F.2d at 1327, and requiring a showing that the school corporation's " 'failure to train its employees ... evidences a "deliberate indifference" ' to the rights of students." *Id.* (quoting *City of Canton*, 489 U.S. at 389, 109 S.Ct. at 1205.)

14. The Plaintiffs in their brief argue that Schuldt repeated a "policy" of excluding religious tracts to Bryan "at the direction of Elmo Carver, the superintendent." (Pl.'s Br. at 6.) The Plaintiffs cite to seventeen pages of Schuldt's deposition transcript for this factual proposition. The court is not obligated to wade through pages of deposition testimony, *see Little v. Cox's Supermarkets*, 71 F.3d 637, 640 (7th Cir.1995), but must rely on the parties to point to specific pages in the record. Even so, the court concludes that Indiana law does not give the Superintendent final policy making authority on the issue of distributing literature in schools.

15. The Defendants also attack the sufficiency of the Amended Complaint because the Plaintiffs failed to allege that the Principal was a final policy maker. *See Baxter*, 26 F.3d at 735 (requiring allegation that a defendant is a final policy maker.) The Plaintiffs request leave to amend their complaint to include allegations that the Principal is a final policy maker. In light of the

Because state law determines who has final policy-making authority, *see, e.g., Partee,* 954 F.2d at 456, the court turns to the relevant Indiana law. Indiana law provides that school boards have the authority to "prepare, make, enforce, amend, or repeal rules, regulations, and procedures for the government and management of the ... school corporation, its agents, employees and pupils...." Ind.Code Ann. § 20–5–2–2(17) (Burns Supp.1995). Thus, the school board and not the Principal or the Superintendent has final policy making authority under Indiana law. *See Partee,* 954 F.2d at 456. The Plaintiffs rely, nevertheless, on the following provision which delegates certain authority to the Principal and the Superintendent:

> Subject to the limitations of section 3 [IC 20–8.1–5–3] of this chapter, each principal may take any action concerning his school or any school activity within his jurisdiction which is reasonably necessary to carry out or prevent interference with an educational function or school purposes. Such action may include establishing written rules and standards to govern student conduct. Similarly, the superintendent ... may take any action ... which is reasonably necessary to carry out or prevent interference with an education function or school purposes.

Ind.Code.Ann. § 20–8.1–5–2(b) (Burns 1992 & Supp.1995) (Repealed, July 1, 1995). This provision permits the Principal and Superintendent to make ad hoc decisions to maintain order within the school. Even so, "[a]uthority to make a final decision need not imply authority to establish rules." *Auriemma v. Rice,* 957 F.2d 397, 401 (7th Cir.1992). *Accord Radic v. Chicago Transit Auth.,* 73 F.3d 159, 161 (7th Cir.1996) (noting distinction between authority to make final administrative decisions and authority to make final policy.) And indeed, the powers delegated to the Principal and Superintendent in Ind. Code.Ann. 20–8.1–5–2(b) are expressly subject to the limitation contained in Ind.Code. Ann. § 20–8.1–5–3 (Repealed, July 1, 1995) which provides:

> All rules, standards or policies adopted by anyone other than the governing body and applying to any group of students or to students generally, shall not be effective until they are reviewed and approved by the superintendent and until they shall be presented to the governing body. The governing body may change any such rule, standard or policy in accordance with procedures which it may from time to time adopt.

Thus, under this provision, any rule of general applicability adopted by a principal is subject to review by the superintendent. And no rule becomes "final" until presented to the board. Thus, the court concludes that neither the Superintendent nor the Principal have the authority under Indiana law to make final policy concerning distribution of literature within the school.[16] Therefore, Franklin is not liable for the alleged violations of federal constitutional or constitutional provisions taken prior to the adoption of the official policy.

court's disposition, the request is denied—an amendment would not stave off the Defendants' attack on the merits.

**16.** The Plaintiff seeks to avoid the import of these provisions by relying on Ind.Code Ann. § 20–8.1–5–3(e) (Repealed July 1, 1995), which is not subject to the review process just cited, and which provides:

> Subsection[ ] (b) ... shall not apply to rules or directions concerning the movement of students, movement or parking of vehicles, day to day instructions concerning the operation of a classroom or teaching station, the time or times for commencement of school, or other standards or regulations relating to the manner in which an educational function is to be carried out.

Plainly this provision is meant to vest teachers and others involved with the day-to-day administration of school activities with some discretion. But nothing in this provision suggests that the school board delegated its authority to make policy on such matters of constitutional import as distributing literature on school grounds.

Finally, the Plaintiffs have referred to the provisions contained in Ind.Code Ann. § 20–2–4–4 and § 20–4–8–10 (Burns 1992 & Supp.1995). These provisions apply to County Superintendents, and § 20–2–4–5 provides that city schools are exempt from these provisions when they request in exemption in writing. The Plaintiffs have not demonstrated that these provisions govern this case.

## 2. Qualified Immunity of Individual Defendants

### a. Constitutional Claims

The Defendants argue that even if the actions taken by Darr, Schuldt and Carver prior to the adoption of the school's official policy were unconstitutional, the individual Defendants are nonetheless immune from liability. Under the doctrine of qualified immunity, " 'government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 736 (7th Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). When a defendant raises the defense of qualified immunity, the court must determine "whether the plaintiff has asserted a violation of a federal constitutional [or statutory] right, and (2) whether the constitutional standards implicated were clearly established at the time in question." *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir.1995). The plaintiff bears the burden of establishing both prongs of this test. *Id.* The Plaintiffs have adequately carried the burden on the first prong, but they have failed to establish that any of the individual Defendants violated a clearly established constitutional or statutory right. To establish that a particular statutory or constitutional right was clearly established at the time of the alleged violation, a plaintiff must " 'offer either a closely analogous case or evidence that the defendant's conduct is patently violative of the constitutional right that reasonable officials would know without guidance from the courts.' " *Baxter*, 26 F.3d at 736 (quoting *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir.1993)). Moreover, "the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation. In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that rights." *Id.*

The Plaintiffs here argue that Darr's and Schuldt's actions in prohibiting Bryan from distributing religious tracts violated Bryan's first amendment rights as "clearly established" in *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In the same breath, however, the Plaintiffs concede that the Seventh Circuit's decision in *Baxter*, 26 F.3d at 736, controls the question of qualified immunity in this case. In *Baxter*, the Seventh Circuit rejected the view that *Tinker* clearly established a grade-school student's right to wear an expressive T-shirt while in school. In holding school officials qualifiedly immune in *Baxter*, the Seventh Circuit noted, among other things, that *Tinker* applied to the expressive activity of high-school students, and not to grade-school students, as here. The Seventh Circuit also noted the "dearth of caselaw in the lower federal courts" discussing the "applicability of the First Amendment to grammar school students." *Id.* at 738. Indeed, this principle applies even if one were to argue that the school officials here should have reasonably known of the Seventh Circuit's holding in *Hedges v. Wauconda Community Unit School Dist. No. 118*, 9 F.3d 1295 (7th Cir.1993), decided on November 23, 1993 (and thus arguably applicable to the second and third instances of alleged constitutional violations.) *Hedges* itself applied to junior high-school students. Furthermore, *Hedges* upheld a policy flatly banning students from distributing "written material which is primarily prepared by non-students or which concerns the activities, or meetings of a non-school sponsored organization." *Id.* at 1296. Thus, under the policy reviewed in *Hedges*, Darr and Schuldt would have been entitled to prohibit Bryan from distributing his religious tract, "The Way to God," because Bryan himself had not prepared it. For all the above reasons, the court holds that the Defendants Darr, Schuldt and Carver are immune from personal liability as to the federal claims in this action.

### b. Claims under RFRA and the Free Exercise Clause

The Plaintiffs have argued that the Defendants violated Bryan's rights under RFRA when they precluded him from distributing tracts on school property before the adoption

of the school policy. The Defendants have raised the defense of qualified immunity for all the Plaintiffs' claims. The Plaintiffs have not argued this point in their brief, and so have failed to meet their burden of establishing that the Defendants violated a "clearly established" constitutional or statutory right. The court thus concludes that the individual Defendants are immune from personal liability on these federal claims.

### 3. Violation of the Constitution of the State of Indiana

The Plaintiffs have also alleged violations of Article I, §§ 2, 3 and 9 of the Constitution of the State of Indiana. The court notes that the Plaintiffs' claims raise novel and complex issues of state law, and that the court may properly decline to exercise jurisdiction over the claims under 28 U.S.C. § 1367(c). Therefore, the court defers its disposition of these claims pending resolution of the remaining federal claim. Alternatively, the court directs the parties to brief the appropriateness of certifying these questions to the Indiana Supreme Court pursuant to IND.R. OF APP.PROC. 15(*O*), particularly in light of the Indiana Supreme Court's recent opinion in *Price v. State,* 622 N.E.2d 954 (Ind.1993).

### CONCLUSION

For the reasons stated above, the court will **GRANT** the Defendants' motion for summary judgment on all federal claims, except for the Plaintiffs' claim that the current policy constitutes a prior restraint under the First Amendment of the United States Constitution, and except to the extent that Plaintiffs seek to submit additional briefing on their claims under 42 U.S.C. § 2000(a)–1 and 2000(a)–2. The court hereby **ORDERS** additional briefing on the issue of prior restraint as set out in its Entry, and as detailed in its Notice of Briefing Schedule. Further, the court will dismiss all federal claims as to Darr, Schuldt and Carver. The court defers its judgment on the Plaintiffs' state law claims, and hereby **ORDERS** the parties to brief the question of whether the state constitutional claims are suitable for certification to the Indiana Supreme Court under IND.R. OF APP.PROC. 159(*O*), or in the alternative,

whether jurisdiction of this claim should be declined pursuant to 28 U.S.C. § 1367(c).

Obviously, this Entry only addresses some of the claims raised by the Plaintiffs, leaving two for further resolution. Consequently, no final judgment pursuant to Rule 58 is being entered at this time. To avoid the possibility of multiple appeals in this case, the entry of final judgment as to any of the claims will await resolution of these two remaining issues.